Argued and submitted October 5, 1981, reversed and
remanded to Court of Appeals January 26, 1982

In the Matter of the Marriage of

MULLINAX,
*Petitioner on Review,*

*and*

MULLINAX,
*Respondent on Review.*

(NO. 56294, CA A20238, SC 27883)

639 P2d 628

Larry T. Coady, Albany, argued the cause for petitioner on review. With him on the brief was Coady & Moore.

Robert S. Gardner, Corvallis, argued the cause for respondent on review. With him on the brief was Ringo, Walton, Eves & Gardner, P.C.

TONGUE, J.

## TONGUE, J.

This is a suit for dissolution of marriage in which the wife has petitioned this court for review of the dismissal by the Court of Appeals of her appeal from the trial court's decree upon the ground that it was not filed within the time prescribed by law. We reverse that dismissal.

*The Facts.*

On November 21, 1980, the trial court heard the dissolution case. Wife was petitioner; husband was the respondent. Following that hearing and prior to January 16, 1981, the trial court rendered its decision in the case in the form of a memorandum opinion and requested the wife's attorney to prepare the decree. In doing so, the wife's attorney included the following language in paragraph (3) of the decree:

> "That the respondent is hereby required to pay to the petitioner the sum of $200.00 a month for said minor child to assist in the support, maintenance and education of said minor child * * *."

That decree was signed by the trial judge on "this 16th day of January, 1981, and entered *nunc pro tunc* to the 21st day of November, 1980." The decree was filed on the same day, January 16, 1981.[1]

The parties then discovered that the decree did not include a portion of the trial court's decision as set out in its memorandum opinion which provided that $50 of each month's child support payment of $200 was to be applied to a welfare indebtedness in the amount of $250. The parties stipulated to a modification of the decree in order to conform the decree to the provisions of the memorandum opinion. The wife's attorney then prepared an "Amended Decree of Dissolution of Marriage" which was identical in terms to the decree filed January 16, 1981, except for the language of paragraph (3), which, in the amended decree, provides as follows:

---

[1] Although the copies of the two decrees attached as exhibits to the petition for review note only the date of *filing* and not the date of the decrees' *entry* into the trial court's journal, wife in her petition for review states that the decrees were *entered* on January 16, 1981, and February 6, 1981, respectively, the same dates shown on the copies of the decrees as dates of *filing*.

"That the respondent is hereby required to pay to the petitioner the sum of $200.00 a month for said minor child to assist in the support, maintenance and education of said minor child; *that $50.00 per month of the $200.00 support payment will apply to the $250.00 debt to Welfare until it is paid."* (Emphasis added)

It should be noted that paragraph (5) of both decrees provides that husband "* * * is to assume and pay all * * * family obligations * * * [which] include, but are not limited to * * * the Welfare arrearage." The provisions of paragraphs (3) and (5) of the amended decree would appear to refer to the same welfare obligation. The amended decree was signed by another judge of the same circuit court on "this 6th day of February, 1981, and entered *nunc pro tunc* to the 21st day of November, 1980." This amended decree was filed on the same day, February 6, 1981.

On February 20, 1981, wife filed a notice of appeal from:

"* * * the Amended Decree of Dissolution of Marriage entered in this case on February 6, 1981, and entered nunc pro tunc November 21, 1980 * * *."

No notice of appeal was filed by either party from the January 16, 1981, decree. The husband moved to dismiss the appeal from the amended decree on the ground that the notice of appeal had not been filed within the time prescribed by law. On May 5, 1981, the Court of Appeals granted husband's motion and dismissed the appeal, without opinion.

ORS 19.026(1) provides that (with some exceptions not applicable here) a notice of appeal must be filed "within 30 days after the entry of the judgment appealed from." ORS 19.010 provides, in pertinent part, as follows:

"(2) For the purpose of being reviewed on appeal the following shall be deemed a judgment or decree:

"(a) An order affecting a substantial right, and which in effect determines the action or suit so as to prevent a judgment or decree therein.

"* * * * *

"(c) A final order affecting a substantial right, and made in a proceeding after judgment or decree."

1. *Neither the rule in Hewey nor the rules in Farrell resolve the question presented in this case.*

Wife contends that "* * * the present case is not distinguishable * * *" from the decision by this court in *Hewey v. Andrews*, 82 Or 448, 159 P 1149, 161 P 108 (1916), rehearing denied (1917), and that "* * * *Hewey* is still good law." In *Hewey*, the court held, at 451, as follows:

"Where * * * the original judgment is modified by a subsequent order, the date of the latter judgment is the time from which the limitation for taking the appeal should begin to run."

In *Hewey* the modification of the original judgment was the result of the trial court's ruling on the motions for judgment n.o.v. made by counsel for defendants C.S. Andrews and Lilly M. Andrews. The trial court "* * * set aside, vacated, and held for naught * * *" the prior judgment as to Lilly M. Andrews but "* * * continued [that judgment] in full force and effect as to * * * C.S. Andrews * * *." This court explained its holding as follows (82 Or at 451-52):

"In this instance the judgment was not altered as to C.S. Andrews, but if he were dissatisfied with the dismissal of the action as to Lillie M. Andrews, he would have been obliged to appeal from that determination, notwithstanding he may have taken an appeal from the original judgment. This procedure, if sanctioned, would necessitate two appeals by the same party when a single review of the final judgment by him ought to be sufficient, in which appeal the intermediate order could be reviewed: Section 558, L.O.L. We conclude, therefore, that the original judgment, having been set aside in part, was in effect vacated in all particulars, and that the modified judgment by referring to the preceding determination, incorporated therein the original judgment as to C.S. Andrews, thus making the latter judgment final, and the one from which this appeal was properly taken."

In ruling on the motions for judgment n.o.v. in *Hewey,* the court was required to determine whether there was substantial evidence to support the verdict rendered.[2]

---

[2] We need not determine in the present case whether, as husband contends, *Hewey* should be limited to its own facts because the holding in that case has been codified by what is now ORS 19.026(2), which provides as follows:

"(2) Where any party has served and filed a motion for a new trial or a motion for judgment notwithstanding the verdict, the notice of appeal of any party shall be served and filed within 30 days after the earlier of the following dates:

*See Package Containers, Inc. v. Director's, Inc.,* 270 Or 845, 846, 530 P2d 40 (1974). Thus, any change made in the prior judgment would, in effect, be a new judgment raising new grounds for appeal rather than a reiteration of a judgment already entered. In other words, the second judgment in *Hewey* was the result of the exercise of the court's "judicial function." In this case, unlike *Hewey,* the parties, by stipulation, requested that the court enter, in the form of an amended decree, a judgment it had already rendered but which had been inaccurately incorporated in the decree first entered. The amended decree in this case was the result of the correction of a "clerical error" rather than the exercise of the court's "judicial function," a distinction explained in detail below. Indeed, as wife states in her supplemental brief:

> "The original decree simply did not conform to the judge's decision."

Finally, the amended decree in this case neither vacated nor incorporated by reference the earlier decree.

In *David M. Scott Construction v. Farrell,* 285 Or 563, 592 P2d 551 (1979), this court was also called upon to decide which of two "decrees" was controlling for the purpose of measuring the thirty-day time limitation provided by ORS 19.026(1). That question was resolved by determining which of the two decrees was the "final" decree in the underlying suit. In making that determination, we noted the rule as stated in *Moran v. Lewis,* 274 Or 631, 634, 547 P2d 627 (1976), that "[o]rders are not appealable until the controversy is completely and finally settled in the trial court." We also noted (at 285 Or 568) that, as stated in 1 Freeman on Judgments § 38, at 63 (5th ed 1925):

> "The general rule 'as deducible from the authorities, is that if anything further in the nature of judicial action on the part of the court is essential to a final determination of the rights of the parties, the judgment is interlocutory only.' * * *"

And that as stated in Freeman, *supra,* at § 33, 55:

---

> "(a) The date of entry of the order disposing of the motion.
>
> "(b) The date on which the motion is deemed denied, as provided in ORCP 63 D. or 64 F."

"A judgment or decree which determines all the equities or the substantial merits of the case is final for purposes of appeal though further proceedings may be necessary in the execution of it or some incidental or dependent matter may still remain to be settled. * * *"

Applying these rules, which we found to be consistent with our previous decisions,[3] to the decrees in *Farrell,* we held (285 Or at 569-70) that the earlier decree entered by the trial court in that case was not a "final decree" so as to require the filing of a notice of appeal within thirty days from the entry of that decree, but that the subsequent decree, although entitled "Supplemental Decree," was the "final and appealable decree" in that case. Thus, the determination that only one of the two decrees in *Farrell* possessed the characteristics of a "final" decree under the rules as stated in that case answered the question presented in that case, i.e., from which decree the appeal should have been taken for purposes of ORS 19.026(1).

■     The application of those rules to the two decrees here will *not* resolve the question presented in this case. This is so, because *each* of these decrees, considered separately and measured by the rules in *Farrell,* is "final and appealable." Each purports to finally "[determine] all the equities [and] the substantial merits of the case," in that each decree is a "decree of dissolution of marriage" and each, by its terms, (1) dissolves the marriage of the parties; (2) awards "sole and exclusive" custody of the child of the marriage; (3) requires husband to pay wife $200.00 per month for support of the child "until majority, and thereafter while the child is attending school, and is under 21 years of age * * *"; (4) provides that husband assume and pay all outstanding "family obligations as of November 21, 1980"; and (6) divides the parties' real and personal property between them. *See* ORS 107.105(1)(a), (b), (d) and (e).

Furthermore, neither the original nor the amended decree contains reservations of jurisdiction which, as in *Farrell,* have the effect of making one or the other "interlocutory only," nor does the possibility that portions of either decree may be later modified under ORS

---

[3] *Lyon v. Mazeris et al,* 170 Or 222, 230, 132 P2d 982 (1943), and *Hall et al v. Pierce, Bone,* 210 Or 98, 152-54, 307 P2d 292, 309 P2d 997, 309 P2d 998 (1957).

107.135(1)(a)[4] render those provisions not "final" and, therefore, not "appealable." *See Prime v. Prime,* 172 Or 34, 40-41, 139 P2d 550 (1943) (alimony); *Sheedy v. Sheedy,* 128 Or 397, 401-02, 274 P 316 (1929) (child custody); and *Jolliffe v. Jolliffe,* 107 Or 33, 35-36, 213 P 415 (1923) (alimony). The original decree in this case was amended pursuant to a trial court's "inherent power" to correct its record to conform to the judgment actually rendered, as discussed below. The existence of such authority does not of itself make the decree of January 16, 1981, "interlocutory only." But for the entry of the amended decree, February 6, 1981, the first decree in this case would have been "final and appealable."

2.  *The decree in this case was amended for the purpose of correcting a "clerical error."*

This court in *Daugharty v. Gladden,* 217 Or 567, 341 P2d 1069 (1959),[5] explained the distinction between the exercise of "judicial function" and the correction of "clerical error" by reference to the definition found in 1 Freeman on Judgments § 146, at 284 (5th ed 1925):

"* * * 'clerical' is employed in a broad sense as contradistinguished from 'judicial' error and covers all errors, mistakes, or omissions which are not the result of the exercise of the judicial function. In other words, the distinction does not depend so much upon the person making the error as upon whether it was the deliberate result of judicial reasoning and determination, regardless of

---

[4] ORS 107.135(1)(a) provides:

"(1) The court has the power at any time after a decree of annulment or dissolution of marriage or of separation is granted, upon the motion of either party and after service of notice on the other party in the manner provided by law for service of a summons, to:

"(a) Set aside, alter or modify so much of the decree as may provide for the appointment and duties of trustees, for the custody, support and welfare of the minor children, or for the support of a party; * * *."

[5] In *Daugharty,* a criminal defendant was indicted and convicted by a jury of "uttering" a forged check. By mistake, the judgment order stated that defendant had been indicted and convicted of "forgery." More than a year later the trial court signed an order amending the prior judgment to accurately reflect the indictment and verdict and entered the subsequent order "nunc pro tunc as of [the date of the original judgment]." The defendant, in his petition for a writ of habeas corpus, contended that the original judgment entered was void because it recited the conviction and sentencing of defendant for a crime different from that for which he was tried and convicted.

whether it was made by the clerk, *by counsel or by the judge.* * * *"[6] (Emphasis added.)

■ ■ The purpose of an amendment correcting a "clerical error" is "* * * to make the record speak the truth and conform it to what actually occurred." *Hubbard v. Hubbard,* 213 Or 482, 487, 324 P2d 469 (1958). A trial court has "inherent power" to make such corrections. *Daugharty v. Gladden, supra,* at 576-77, and cases cited therein. *See also Far West Landscaping, Inc. v. Modern Merchandising,* 287 Or 653, 658, 601 P2d 1237 (1979), and cases cited therein. This inherent power may be exercised even after an appeal has been taken from the trial court's judgment. *See Caveny v. Asheim et al,* 202 Or 195, 208-210, 274 P2d 281 (1954).[7] The amended decree in this case was entered, upon the stipulation of parties, for the purpose of correcting a "clerical error."

Having concluded that the amendment herein resulted from the correction of a "clerical error," we must now decide the effect of the amendment upon the timeliness of this appeal, i.e., should the date for measuring the time allowed for the filing of a notice of appeal be the date of entry of the decree attempting, but failing, to incorporate the decision actually rendered or from the date of entry of the amended decree accurately stating that decision?

The husband cites the Annotation, 21 ALR 2d 285 (1952), for a statement of the "general rule" applicable in such circumstances, which is as follows:

---

[6] For examples of "clerical errors" made by counsel, *see Kane v. Kane,* 616 P2d 780 (Wyo 1980), in which counsel, while preparing a proposed decree as requested by the trial court, failed to include within the legal description all the land covered by the decree, and in *Mulder v. Mendo Wood Products, Inc.,* 225 Cal App 2d 619, 37 Cal Rptr 479 (1964), *cert denied* 379 US 844, 85 S Ct 85, 13 LEd 2d 50 (1964), in which an amended judgment was entered to eliminate an award of interest which had been inadvertently inserted in the original judgment, the draft of which had been prepared by counsel.

[7] At 210, the court stated as follows:

"As far as we are presently advised, this court has not yet recognized a right in the circuit court to change any part of its record after this court has acquired appellate jurisdiction in a given matter, *except for the express purpose of making its record speak the truth as to matters and things transpiring prior to the entry of its original judgment or decree.* Such is the tenor of *Cranston v. Stanfield et al.,* supra, and we adhere to it." (Emphasis added.)

"While it appears well settled, as a general proposition, that where a judgment, order, or decree is amended or modified, the time within which an appeal from such determination may be taken begins to run from the date of the amendment or modification, *many courts have added the qualification that the amendment or modification must be a substantial or material one, and not the mere correction of a clerical or formal error in the original judgment.*" Annot., 21 ALR 2d at 287. (Emphasis added.)
    "* * * * *

"In the application of the rule that the time for appeal is to be computed from the date of the amendment or modification of the judgment, some courts have pointed out that *the change must be a material one affecting the substantial rights of the parties.* The materiality of the amendment has been said to be particularly apparent where the original judgment was not such as would have in itself supported an appeal." Annot., 21 ALR 2d at 295. (Emphasis added.)
    "* * * * *

"Many courts appear to agree that the rule extending the time for appeal to the date of the amendment or modification of the judgment, order, or decree is subject to the *qualification* that *where an amendment relates solely to the correction of a clerical or formal error in the judgment, the appeal time is not extended but is computed from the date of the original judgment.* * * *" Annot., 21 ALR 2d at 297. (Emphasis added.)

In the better-reasoned decisions from other jurisdictions in which the "rule" stated in Annot., 21 ALR 2d 285 (1952), together with the qualifications to that rule, are applied, courts, having determined that an amendment to a prior judgment is "clerical," appear to base the decision whether the time for appeal should be measured from the original judgment or the amended judgment upon: (1) whether the amendment, in effect, either materially alters rights or obligations determined by the prior judgment or, (2) whether, because of the nature of the amendment, a right of appeal is created where one did not exist before. If the amendment is found to have either of these effects, the time for appeal is measured from the entry of the amended judgment.[8] *See Adamson v. Brockbank,* 112 Utah 52, 185

---

[8] We reject as unnecessarily mechanical and inconsistent with the decisions by this court in *Lee v. Imbrie* and *Ensley-Koebel v. Nat. Guar. Prop,* discussed

P2d 264 (1947); *Kolasz v. Levitt,* 404 NYS 2d 914 (1978). *See also Kooyenga v. Hertz Equipment Rentals, Inc.,* 79 Ill App 3d 1051, 399 NE 2d 216, 221-22 (1979). If, on the other hand, such effects do not result from the correction of the "clerical error," the amendment does not extend the time allowed for appeal. *See Perfection Stove Co. v. Scherer,* 120 Ohio 445, 166 NE 376 (1929). *Compare B.G. Leasing, Inc. v. Heider,* 372 So 2d 184, 185 (Fla App 1979).

This court has previously neither expressly adopted nor rejected such a rule. However, the reasoning expressed in decisions by this court in cases in which similar questions were presented is consistent with this rule and, therefore, we find it appropriate to apply the rule in this case.

Thus, in *Lee v. Imbrie,* 13 Or 510, 11 P 270 (1886), plaintiffs brought suit against several defendants to recover subscriptions to unpaid capital stock. The "referee" found against defendants and held that defendant was liable for the full amount of the stock subscription less an offset. By inadvertence, reference to one of the defendants was omitted from the decree. Approximately one year later, upon motion of plaintiffs, an order was made that a decree be also entered against that defendant *nunc pro tunc,* which entry was made. That defendant then appealed and plaintiff moved to dismiss the appeal upon the ground that the time had elapsed in which to appeal. In denying that motion, this court made the following observation (13 Or at 511-12):

---

*infra* at 426-431, the statement of the "rule" in some cases to the effect that the only decision to be made is whether the amendment is "clerical." *See Mulder v. Mendo Wood Products Inc.,* 225 Cal App 2d 619, 37 Cal Rptr 479, 489 (1964), *cert denied* 379 US 844, 85 S Ct 85, 13 LEd 2d 50 (1964), in which the court held:

"It is settled that *where the amendment merely corrects a clerical error and does not involve the exercise of judicial discretion, the original judgment remains effective and unimpaired and the amendment does not operate as a new judgment from which a new appeal may be taken.* (O'Connor v. Skelton (1961) 195 Cal. App. 2d 612, 614-615, 15 Cal. Rptr. 894; McConville v. Superior Court (1926) 78 Cal. App. 203, 207, 248 P. 553; George v. Bekins Van & Storage Co. (1948) 83 Cal. App. 2d 478, 480-481, 189 P.2d 301.)"

It is significant that in *Mulder* an appeal *was* taken from the original judgment, so that the application of the rule as stated did not have the effect of foreclosing appellant's right of appeal. *Compare George v. Bekins Van & Storage Co.,* 83 Cal App 2d 478, 189 P2d 301 (1948).

"The Code provides that an appeal to the Supreme Court shall be taken by serving and filing the notice of appeal within six months from the entry of the judgment or decree appealed from. (Civil Code, sec. 527, subd. 5.) It seems to me that if the party in whose favor a judgment or decree is ordered desires to cut off the right of the adverse party to appeal therefrom, he must attend to it that the judgment or decree is entered, though under the view the court has taken of this case it is not necessary to express a decided opinion upon that point."[9]

In other words, until a judgment was entered against that defendant, he had literally *nothing* from which to appeal.

---

[9] *Compare Fisher v. Portland Ry, L&P Co.*, 74 Or 229, 137 P 763 (1914) (overruling motion to dismiss appeal), *decided on merits* 74 Or 229, 145 P 277 (1915). In *Fisher* a jury on April 17, 1913, returned a verdict against defendant-appellant but not against the other defendant. On the same day a judgment was mistakenly docketed against *both* defendants. On July 3, 1913, defendant-appellant filed its notice of appeal. On August 29, 1913, the circuit court, noting that through "inadvertence or mistake" a judgment was entered against *both* defendants when, in fact, a verdict had been returned against defendant-appellant only ordered the judgment amended to correctly reflect the actual verdict and ordered that "this order be entered nunc pro tunc as of the 17th day of April, 1913." No notice of appeal from this judgment was filed. In overruling respondent's motion to dismiss the appeal from the original judgment on the ground that it had been annulled by the amended judgment, this court explained (74 Or at 232-33) as follows:

> "While the court used the expression that the original judgment was 'annulled and held for naught,' *subsequent language shows that the order was only nunc pro tunc in character. All the court professed to do by the last order was to eliminate one of the defendants and thereby relieve it from the burden of the first judgment.* This court had a right to do by the entry of the judgment of August 29, 1913, as and of April 17, 1913, so that the latter *order would reflect the truth of the record which by inadvertence was omitted from the primal judgment: Grover v. Hawthorne,* 62 Or 65 (116 Pac 100, 121 Pac 804); *Frederick & Nelson v. Bard,* 66 Or. 259 (134 Pac. 318). Therefore, on principle, the only judgment which speaks the final determination of the rights of the parties as adjudged by the lower court is the one from which this appeal is taken under date of April 17, 1913."

*Fisher* is to be distinguished from *Lee v. Imbrie* on its facts. The defendant-appellant in *Fisher* could have appealed and did appeal from the first judgment. Thus, the timeliness of the appeal was not at issue, but rather whether a subsequent judgment correcting "clerical errors" in a prior judgment nullified the prior judgment.

In a similar situation, in *Oregon-Wash. Co. v. School Dist. No. 25,* 89 Or 7, 173 P 261 (1918), the court reached an opposite result from that in *Fisher,* holding that a later decree superseded the earlier decree and dismissing the appeal from the earlier decree. In *Oregon-Wash. Co.,* however, the trial court entered an order vacating the prior decree. Furthermore, the amended judgment in *Fisher* was entered *after* the expiration of the term during which, at that time, the trial court had authority to effect a nullification of the prior decree.

To conclude otherwise, as plaintiffs had urged, would, in effect, have deprived that defendant of all right of appeal. As stated in 1 Freeman on Judgments § 139 at 264 (5th ed 1925):

> "It hardly requires argument or authority to establish the proposition that a court cannot, by antedating an order or the entry of it, cut off the statutory right to move for a new trial, to move to set aside the judgment, or to appeal. The test in such cases, as to whether the period within which a party must act has elapsed is whether he could have obtained the desired review or relief before the nunc pro tunc order was made. Hence where a judgment as entered omits the name of a defendant so that an appeal by him would be a nullity and a subsequent amendment is made nunc pro tunc whereby the judgment is made to run against him, his right to appeal accrues and runs from the actual entry of this last order, even though he may have been a party to a previous appeal." (Footnotes omitted.)

Similarly, in *Ensley-Koebel v. Nat. Guar. Prop.*, 279 Or 391, 568 P2d 655 (1977), which began as a suit to foreclose a mechanic's lien, a judgment and decree of foreclosure were entered on April 30, 1976, in favor of cross-complainant, Continental, the assignee of a second mortgage. The foreclosure decree described two parcels of real property but made no reference to personal property. Pursuant to a writ of execution, the real property was sold. On August 9, 1976, Continental filed a motion to modify and amend the decree, based upon the affidavit of counsel that "by mistake and inadvertence," the decree as prepared by him did not refer to the personal property covered by the mortgage as recorded in the county records. An affidavit filed by Continental's president stated that it was his intent to foreclose on both the real and personal property.[10]

---

[10] The cross-complainant for foreclosure alleged that the mortgage covered real property to secure a note, attached a copy of the mortgage which described two parcels of real property as subject to the mortgage, and prayed for a decree of foreclosure and sale of "the property covered thereby." Following defendant's general denial in response to the cross-complaint, Continental filed a motion for summary judgment to which a copy of the mortgage was attached and which included a page not included in the copy attached to the original complaint and which, by its terms, granted to the mortgagee a security interest in "all personal property * * * now or hereafter placed in or affixed to the herein described real estate * * * including all equipment of every kind. * * *"

The trial court granted the motion and entered an amended decree on September 15, 1979, holding that the mortgage covered both real and personal property described therein, foreclosing the mortgage and directing that such property be sold as provided by law. Thereafter, over the objections of defendants, the trial court allowed Continental's motion to set aside the previous sheriff's sale and entered an order to that effect. Defendants appealed from that order. This court held as follows (279 Or at 395-96):

"As previously stated, *no appeal was taken from the amended decree of foreclosure which provided for a judicial sale of both the real and personal property. The 30-day period permitted for such an appeal by ORS 19.026 has long since expired. In addition, it would appear that the order setting aside the previous sheriff's sale is not an appealable order, but that any appeal should have been taken from the amended decree.*

"In any event, and regardless of whether the trial court could properly enter an amended foreclosure decree requiring the sale of personal property not included or described in the copy of the mortgage as attached to the original complaint, once that amended decree was entered, the court then had the power to set aside the sale made under the previous decree, particularly in view of the fact that no order had ever been entered confirming that decree.

"Until an order has been entered confirming a sheriff's sale under a decree foreclosing a mortgage, *such a sale can be set aside by the trial court for mistake relating to the property covered by the mortgage.* (Citations)

"Furthermore, at the hearing on the motion to amend the decree of foreclosure to include the personal property, based upon the claimed mistake of Continental's attorney, *defendants Rounds did not deny that such a mistake had been made* and did not complain of the failure to serve them with that motion. Not having made those contentions in the trial court, such contentions cannot properly be made for the first time on appeal." (Emphasis added)

The court's conclusion that defendants should have appealed from the amended decree is consistent with the reasoning in *Lee v. Imbrie,* noted above, and reasonable under the facts of the case. As in *Lee v. Imbrie,* defendants could not have appealed the decree foreclosing the mortgage with respect to the personal property until such

provision was made by the amended decree.[11] Indeed, it would be inequitable and illogical to require the time for defendant's appeal from the decree affecting the personal property to be measured from the entry of the original decree, particularly in such a case in which the sole basis for the appeal was the amended portion of the decree.

■     We conclude that our decisions in *Lee v. Imbrie* and *Ensley-Koebel v. Nat. Guar. Prop.* support the application in this case of the rule applied in other jurisdictions in such cases, which is as follows: If the amendment of a final judgment or decree for the purpose of correcting a "clerical error" either materially alters rights or obligations determined by the prior judgment or creates a right of appeal where one did not exist before, the time for appeal should be measured from the entry of the amended judgment. If, however, the amendment has neither of these results, but instead makes changes in the prior judgment which have no adverse effect upon those rights or obligations or the parties' right to appeal, the entry of the amended judgment will not postpone the time within which an appeal must be taken from the original decree.

The amendment in this case corrected a "clerical error." The parties agree that the amended decree accurately states the decision by the trial court as expressed by its memorandum opinion. By requiring that $50 per month of husband's $200 per month child support obligation be applied as payment of a $250 welfare indebtedness "until it is paid," the amended decree had the effect of reducing the net amount received by wife for support of the child from $200 to $150 per month. Although this amendment did not affect the rights of the wife as dramatically as the amendments in *Lee v. Imbrie* and *Ensley-Koebel* affected the

---

[11] The amendment in *Ensley-Koebel* does not fall precisely within the definition of an amendment of a "clerical error" to the effect that such an amendment has the result of conforming the judgment *entered* to the judgment actually *rendered;* i.e., it does not appear that the trial court actually decreed foreclosure as to both real and personal property originally and the attorney failed to include reference to the personal property in the draft of the decree. However, because the original judgment *rendered* by the trial court *did* decree the foreclosure of the mortgage at issue in favor of Continental (which mortgage as recorded in the county records covered both real and personal property), we find the situation in *Ensley-Koebel* to be sufficiently analogous to the facts in those cases from this and other jurisdictions involving "clerical errors" to warrant our considering the reasoning in *Ensley-Koebel* in formulating a rule for the disposition of this case.

rights of appellants in those cases, and although the reduction in child support is not permanent, we hold that the amendment constituted a material change in the rights of the parties as stated in the original decree. Furthermore, assuming that paragraphs (3) and (5) of the amended decree refer to the same welfare indebtedness, the amendment to paragraph (3) had the effect of at least creating an ambiguity with regard to the responsibility for the discharge of that obligation, if not relieving the husband from that responsibility entirely. In that regard, as stated by this court in *Farrell*, (285 Or at 568):

> "* * * [I]n a close case such as this, any doubts should be resolved against such a result as would bar the appellant from an appeal."

It should also be noted that in a case such as this in which an amended decree is entered to correct a "clerical error," whether or not such an amended decree expressly vacates the prior decree, though a significant factor, will not always be dispositive on the question of the timeliness of an appeal. As stated in *Hopfer v. Staudt*, 207 Or 487, 298 P2d 186 (1956), at 502:

> "In *Barrell v. Tilton*, 119 US 637, 30 L Ed 511, a second decree was entered which differed from the first. The United States Supreme Court said:
>
> " 'When the second decree was made, it would, as stated by the learned district judge, have been a better course, "more orderly and convenient," as he expresses it, "to have referred to the first one, and stated in what particular the latter was intended to modify, supplement or supersede the former." But this was not essential; a comparison of the two decrees discloses the additions made to the first one.'
>
> "No reversible error was committed by the failure of the trial court expressly to vacate the earlier judgment. *The intent to vacate was clearly implied.* We conclude that the judgment n.o.v. constituted a vacation of the prior judgment and we therefore pass on to a consideration on the merits * * *." (Emphasis added.)

Although the intent that the amended decree in this case supersede the original judgment is not so clear as the intent in a case such as *Hopfer v. Staudt*, in which the second judgment was, in effect, the exact opposite of the prior judgment, neither was the amended decree in this

case a repetition or re-entry of the prior judgment, in which case the prior judgment would not be deemed to have been vacated or superseded. *See Oxman et al v. Baker County,* 115 Or 436, 444, 234 P 799, 236 P 1040 (1925). *Compare Cockrum v. Graham,* 143 Or 233, 246-247, 21 P2d 1084 (1933). This amended decree, with the exception of the modification to the child-support provision, incorporates completely the provisions of the original decree. It neither expressly vacates nor nullifies that prior decree. However, as we now hold, it is the *effect* of the amendment, rather than its particular *form,* which is crucial in determining whether time for an appeal should be measured from its entry. Therefore, we conclude that for these purposes, the *effect* of the entry of this amended decree by stipulation of the parties was to supersede and replace the original decree.

Finally, we note that, although it was the attorney for the *appellant* who inadvertently omitted the provision later added from the original decree, our holding is not to be construed as limiting or creating an exception to the rule stated in *Far West Landscaping, Inc. v. Modern Merchandising, supra* (287 Or at 658), that the "* * * inherent authority of the trial court to rectify its mistake [has not been] approved for the purpose of lengthening the statutory time for appeal." There is no indication that such was the purpose of the entry of the amended decree in this case.

For all of these reasons, we hold that the notice of appeal in this case, filed February 20, 1981, was timely in that such notice was filed within thirty days of the entry of the amended decree on February 6, 1981, as provided by ORS 19.026(1).

The order by the Court of Appeals dismissing wife's appeal is reversed.

Reversed and remanded to the Court of Appeals.